Stuart R. Dunwoody
Jin H. Kim
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
(206) 622-3150

FILED IN THE
U.S DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 26 1999

JAMES R. LARSEN, CLERK
_____, DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES M. BLACKFORD, <br><br> Plaintiff, <br><br> v. <br><br> BATTELLE MEMORIAL INSTITUTE, <br><br> Defendant. | No. CS-98-032-FVS <br><br> DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

Pursuant to Local Rule 56.1(c), defendant, Battelle Memorial Institute, submits this Statement in Rebuttal to Plaintiff's Statement of Specific Facts in Opposition to Defendant's Motion for Summary Judgment.

**Rebuttal of Plaintiff's Response to Defendant's Facts**

1. **Defendant's Fact No. 1.** Not disputed.
2. **Defendant's Fact No. 2.** Not disputed.

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 1
F:\DOCS\21026\65\23993PLD.DOC
Seattle

ORIGINAL

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

3. **Defendant's Fact No. 3.**

(a) Contrary to the requirements of LR 56.1(b), Blackford does not specify in his Statement of Specific Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Statement of Specific Facts") those facts that counter Defendant's Fact No. 3. The Court thus may deem it undisputed under LR 56.1(d).

(b) The assertion in Plaintiff's Fact No. 7 that "there was no formal or written employment rule or policy at Battelle requiring that employees such as Blackford maintain a certain level of funded participation in projects on penalty of discharge," does not counter Defendant's Fact No. 3. The deposition excerpts cited in Plaintiff's Fact No. 7 -- Neal Deposition at 24 and Mahan Deposition at 12-13 -- do not support it. Neal simply testified that he did not know of "a policy or regulation or rule that specifically indicated that a person who did not maintain the appropriate level of funding for projects for themselves on projects was subject to discharge," and Mahan testified that he did not know whether the policy requiring employees to maintain their funding was set forth in writing.

4. **Defendant's Fact No. 4.** Not disputed.

5. **Defendant's Fact No. 5.**

(a) Contrary to the requirement of LR 56.1(b), Blackford does not specifically identify in his Statement of Specific Facts any facts that are contrary to Defendant's Fact No. 5. Pursuant to LR 56.1(d), the Court thus may assume that the facts are admitted to exist without controversy.

(b) Defendant's Fact No. 5 is not countered by the assertion in Plaintiff's Fact No. 7 that

> Blackford was never presented with such a rule or policy [*i.e.*, one "requiring that employees such as Blackford maintain a certain level of funded participation in

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 2
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

> projects on penalty of discharge"] in any formal sense prior to being told by Mr. Heister, on page three of his last performance evaluation, that it was "Our cultural expectation" . . . "that senior staff, like yourself, will keep themselves fully funded on project work."

This portion of Plaintiff's Fact No. 7 is contrary to Exhibit B to the Heister Declaration, in which Heister informed Blackford, in June 1995, that it was an expectation that staff such as Blackford "take ownership for finding project assignments and that they take a proactive role in aligning themselves with assignments that are rewarding as assist with their career development." It is also contrary to Paragraph 5 of the Heister Declaration and Exhibit A to the Heister Declaration, in which Heister, in December 1995, refers to Blackford's "concerns about the way we do business in the department and the laboratory in general **as far as insisting that individuals are 100% covered with project work.**" (emphasis added.) Blackford cannot create a fact issue simply by disputing the plain language of these documents.

6. **Defendant's Fact No. 6.** See discussion of Defendant's Fact No. 5 above.

7. **Defendant's Fact No. 7.** Contrary to Blackford's assertion, Defendant's Fact No. 7 is not countered by Plaintiff's Facts Nos. 4, 5, and 13.

(a) Plaintiff's Facts Nos. 4, 5, and 13 do not contest the first sentence of Defendant's Fact No. 7, that Blackford had difficulty keeping himself fully occupied with project work, and charged much of his time to idle time.

(b) Blackford appears to take issue only with the second sentence of Defendant's Fact No. 7, which states that Blackford was viewed as a poor contributor and as a nonproductive member of project teams, and that this contributed to his problems in finding sufficient project work. Contrary to Plaintiff's Fact No. 4, Blackford's December 1995 and January 1997 performance

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 3
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

evaluations (Blackford Decl. Exs. A and B, and Heister Decl. Exs. A and C) do not counter the second sentence of Defendant's Fact No. 7. Rather, those performance evaluations identified performance problems. *See* Heister Decl. Ex. A at 2, Ex. C at 1-3. In addition to the performance problems identified on pages 1 through 3 of the January 1997 performance evaluation, Heister listed on page 3 of that performance evaluation four expectations of a S/E III (Blackford's classification) that Blackford was not fully meeting, stated that his failure to do so "has a significant impact on your not being able to keep yourself fully funded on project work," and concluded that "these are the areas of performance expectation in which you need to continue improving to rectify the situation of your not being able to maintain a project funded status." Heister Decl. Ex. C at 3. In addition, Blackford's February 1995 performance evaluation, Blackford Decl. Ex. D, which was issued **before** Blackford's February 22, 1995 memo raising his complaints, details numerous performance problems.

        **(c)** The statement in Plaintiff's Fact No. 5 that Blackford "formed the understanding, on the basis of comments made to him by some of those project managers, that Mr. Heister and others in Battelle's management were sabotaging his attempts to find work on projects" is hearsay, FRE 802, and should be stricken. Although the admission of a party opponent is an exception to the hearsay rule, FRE 801(d)(2), to admit a statement under that exception, the proponent must identify the agent or agents of the adverse party who made the supposed admission. *Zaken v. Boerer*, 964 F.2d 1319, 1323-24 (2d Cir.), *cert. denied*, 506 U.S. 975 (1992); *Gulbranson v. Duluth, Missabe & Iron Range Rwy. Co.*, 921 F.2d 139, 142 (8th Cir. 1990); *Wells v. General Elec. Co.*, 807 F. Supp. 1202, 1209 (D. Md. 1992), *aff'd* 9 F.3d 1112 (4th Cir. 1993). Blackford has not done so, and the statement, together with the second sentence of Paragraph 5 and the second

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 4
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

1  sentence of Paragraph 12 of the Declaration of James M. Blackford, should be
2  stricken.

        **(d)**    The assertions in Plaintiff's Fact No. 13 do not controvert the
fact that Blackford had poor performance on several projects and that this
contributed to his problems in finding sufficient project work.

6      8.    **Defendant's Fact No. 8.** Not disputed.
7      9.    **Defendant's Fact No. 9.** Not disputed.
8      10.    **Defendant's Fact No. 10.** Not disputed.
9      11.    **Defendant's Fact No. 11.** Not disputed.
10     12.    **Defendant's Fact No. 12.** Not disputed.
11     13.    **Defendant's Fact No. 13.** Not disputed.
12     14.    **Defendant's Fact No. 14.** Contrary to Plaintiff's Fact No. 6, there are
no facts showing that the exchange of e-mail that is Exhibit C to the Blackford
Declaration had any effect on Heister's recommendation that Blackford be
terminated or on Work's decision to authorize the termination.

        **(a)**    Blackford Decl. Ex. C consists of three e-mail messages. In the
first message, at the bottom of the second page of Exhibit C, James Wise told Earl
Heister that he would need at least a month of funding to transfer Blackford onto a
project called SPIRE. Heister's response, at the bottom of the first page and the
top of the second page of Exhibit C, states that he could not fund project work
from training funds, because it would be an illegal charging practice, but that he
could fund training time. Wise's reply appears at the top of the first page of
Exhibit C. Wise stated that the issue was moot because he was being removed as
project manager of the SPIRE project. Wise then stated that another Battelle
employee, Richard Chidester, had said of Blackford, "we don't want him here.
He's a troublemaker." It is clear from the e-mail exchange that the statement by

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 5
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 5
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Chidester, if it occurred, did not affect Wise's opinion of Blackford. Nor is there any evidence that Heister relied on this supposed statement by Chidester when, over a year later, he recommended that Blackford's employment be terminated. There is no evidence that Gerald Work, who decided to terminate Blackford, ever saw Exhibit C.

      **(b)** The contentions contained in Plaintiff's Fact No. 10 do not counter the substance of Defendant's Fact No. 14. Richard Neal recognized that Blackford considered himself to be a whistleblower, but that does not establish that Heister recommended that Blackford be terminated or that Work decided that Blackford be terminated as a result of his would-be whistleblower status. The deposition testimony of Richard Neal at 15-16 shows only that Neal was aware that Blackford believed that he was being harassed and subjected to reprisal (although not for opposing discrimination at Battelle), but it does not show that Blackford's perception of himself had any effect on Heister's termination recommendation or Work's decision to terminate. The deposition testimony cited in the third sentence of Plaintiff's Fact No. 10, Neal Dep. at 9, refers to what was done in 1995 when Blackford's supervisor gave him an "improvement required" performance rating. The testimony does not state that a career development plan was necessary before terminating Blackford's employment in 1997, nor does it counter the testimony that the recommendation and decision to terminate Blackford were based solely on his failure to keep himself fully occupied with project work.

    15. **Defendant's Fact No. 15.** The evidence cited in Plaintiff's Fact No. 16 does not counter Defendant's Fact No. 15. It does not show that Heister or Work were aware of Blackford's allegations concerning financial misreporting with respect to the UniCall process at the time Blackford was terminated. Blackford's theory appears to be that Mahan, the person for whom Blackford did

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 6
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

1  the work on the UniCall project, must have put some information about
2  Blackford's concerns about the UniCall process into a file that Mahan had
3  maintained on Blackford, and that Mahan must have provided that file to the
4  Human Resources Department prior to Blackford's termination. But this is pure
5  speculation, and in any event the evidence is to the contrary. Mahan was not
6  Blackford's supervisor when he created the documentation file in November of
7  1993, Mahan Dep. 79:25-80:4; 81:1-3 (Ex. 1 to Plaintiff's Statement of Specific
8  Facts). Mahan was not certain whether the file contained any information from the
9  period after Blackford worked for him. *Id.* at 81:10-21. In deposition testimony
10 that Blackford did not supply the Court, Mahan testified that his documentation file
11 had been inactive "for a long time," and that it had been inactive as of
12 November 1993. Mahan Dep. 104:1-18 (attached hereto as Ex. 1). Moreover,
13 Mahan had no input into the decision to discharge Blackford; he was not even
14 asked his opinion. *Id.* at 76:14-19 (attached hereto as Ex. 1). There is no evidence
15 that Mahan gave his file to the Human Resources Department before Blackford
16 was terminated. Finally, Neal's participation in the discharge of Blackford was as
17 part of the Personnel Action Review Committee that reviewed Work's decision to
18 discharge Blackford. Neal Dep. 47:6-14.

19         16.    **Defendant's Fact No. 16.** Plaintiff's Fact No. 20 does not counter
20 Defendant's Fact No. 16. In Interrogatory No. 3, Battelle asked Blackford to give
21 details concerning "any alleged instance of wrongdoing or misconduct by Battelle
22 other than those described in the memoranda identified in Interrogatories No. 1 and
23 2." Blackford responded "I know of no instance of wrongdoing or misconduct not
24 previously reported in my memorandums, which have been produced or are in my
25 Complaint, except for the Personal Workstations Assessment Program." That
26 Blackford referred in other interrogatory answers to various federal and state

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 7
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

statutes that he contends are relevant to his complaints does not change the fact that the factual basis for his allegations of misconduct are, with one minor exception, contained in the two memoranda.

17. **Defendant's Fact No. 17.** Plaintiff's Facts Nos. 17, 18, 19 and 21 are not contrary to Defendant's Fact No. 17.

(a) First, Blackford seems to rely on a news group posting that a Battelle employee, Darren Curtis, posted in September 1997, several months after Blackford was terminated. Blackford Decl., Ex. H. In that posting, Curtis remarked that it now "only takes two years of record keeping" to fire persons who do not do their work at PNNL, and estimated the cost of firing an S/E III to be about $500,000. Blackford adds to this posting the facts that he was terminated two years after he was transferred to Mr. Heister and was an S/E III to conclude that Heister had plotted from the beginning to terminate him. This is pure speculation. Curtis has never been a member of line management at Battelle, and had no role in the decision to terminate Blackford. Curtis Dep. at 90:15-23 (attached hereto as Ex. 2). In addition, Curtis's statements in the posting are hearsay and are not binding on Battelle as an admission of a party opponent because Blackford has not shown that Curtis was authorized by Battelle to make the statement or that his statements were made within the scope of his employment. *See* FRE 801(d)(2)(C) and (D). There is no factual basis for the assertion in Plaintiff's Fact No. 17 that Curtis was a "close personal friend" of Heister, and it should be stricken, together with the corresponding statement in Paragraph 14 of the Blackford Declaration.

(b) Contrary to Plaintiff's Fact No. 21, Defendant's Fact No. 17 is not a conclusion of law. In its Fact No. 17, Battelle points out, as it is entitled to do under *Celotex v. Catrett*, 477 U.S. 317, 325 (1986), that there are no facts to

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 8
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

support Blackford's claim that he reported misconduct by Battelle that constituted a violation of the letter or policy of the law. The burden now is on Blackford to come forward with evidence showing that he did report a violation by Battelle of the law, and he has not done so.

18. **Defendant's Fact No. 18.** See paragraph 17(b) above.

19. **Defendant's Fact No. 19.** See paragraphs 17(a) and (b) above.

20. **Defendant's Fact No. 20.** See paragraph 17(b) above.

21. **Defendant's Fact No. 21.** See paragraph 17(b) above.

22. **Defendant's Fact No. 22.** See paragraphs 17(a) and (b) above.

23. **Defendant's Fact No. 23.** See paragraphs 17(a) and (b) above.

24. **Defendant's Fact No. 24.** See paragraphs 17(a) and (b) above.

25. **Defendant's Fact No. 25.** See paragraphs 17(a) and (b) above.

26. **Defendant's Fact No. 26.** See paragraph 17(b) above.

27. **Defendant's Fact No. 27.** See paragraphs 17(a) and (b) above.

### Rebuttal of Plaintiff's Facts

In addition to the above rebuttal of those of Plaintiff's Facts that respond to Defendant's Facts, Battelle makes the following rebuttal:

1. **Plaintiff's Fact No. 11.** Contrary to the allegation of the first sentence of Plaintiff's Fact No. 11, the documents show that Blackford was placed on a Corrective Action Plan *before* he made the complaints contained in his February 22, 1995 memo (Blackford Decl. Ex. F). Blackford's February 1995 performance evaluation, which is dated February 16, 1995, states "[e]ffective immediately, you are being placed on a monitored performance corrective action plan." Blackford Decl. Ex. D at 3. Indeed, Blackford's February 22, 1995 memo states in its first sentence that it is written *in response* to the February 1995 performance evaluation. Blackford Decl. Ex. F at 1.

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 9
F:\DOCS\21026\65\23993PI.D.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

2. **Plaintiff's Fact No. 14.** The statement in Plaintiff's Fact No. 14 that Blackford "was informed by some project managers that supervisors were advocating his exclusion from projects" is hearsay, FRE 802, and should be stricken. Although the admission of a party opponent is an exception to the hearsay rule, FRE 801(d)(2), to admit a statement under that exception, the proponent must identify the agent or agents of the adverse party who made the supposed admission. *See* cases cited in connection with Defendant's Fact No. 7 above. Blackford has not done so, and the statement, together with the second sentence of Paragraph 12 of the Blackford Declaration, should be stricken.

DATED this 25th day of March, 1999.

Davis Wright Tremaine LLP
Attorneys for Battelle Memorial Institute

By _____
Stuart R. Dunwoody
WSBA #13948
Jin H. Kim
WSBA #21958

DEFENDANT'S REBUTTAL STATEMENT OF SPECIFIC
FACTS - 10
\\SEA_ABBOTT\DOCS\DOCS\21026\65\23993PLD.DOC
Seattle

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax (206) 628-7699

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF WASHINGTON

 3   ───────────────────────────────────────────────
     JAMES M. BLACKFORD,               )
 4                                     )
              Plaintiff,                )
 5                                     )
         vs.                            ) NO. 2:98-CS-00032
 6                                     )
     BATTELLE MEMORIAL INSTITUTE,       )
 7                                     )         COPY
              Defendant.                )
 8                                     )
     ───────────────────────────────────────────────
 9
            DEPOSITION UPON ORAL EXAMINATION OF
10                       ROBERT MAHAN
     ───────────────────────────────────────────────
11

12

13

14

15

16   TAKEN ON:  Thursday, September 3, 1998

17   TAKEN AT:  Davis Wright Tremaine
                601 Williams Boulevard, Suite 3-A
18              Richland, Washington 99352

19

20

21

22

23

24
     REPORTED BY:  MARILYNN S. McMARTIN, RMR, CCR         DISK
25                 CCR NO. MC-MA-RM-S407CC            ENCLOSED

                    AFFILIATED COURT REPORTERS
                          509-966-6787
                     EXHIBIT ___1___                          1
```

[MAHAN]

1    or who it came from.  It may have been Mike gave it to
2    me.  He was in the habit of keeping me informed of how
3    things were going.
4  Q.  Because he considered you somebody he could confide in;
5    is that what you are saying?
6  A.  I believe he considered me trustworthy with confidences
7    that he had.  I believe he considered me, that I was on
8    his side in terms of I would like to see him succeed.
9  Q.  Was that true, by the way?
10 A.  Yes.  I don't believe anybody's unsalvageable.
11 Q.  So while we're on that subject, you weren't someone who
12   wanted to see him discharged?
13 A.  Nope.
14 Q.  Did you ultimately have input into the decision to
15   discharge him?
16 A.  Nope.
17 Q.  Did anybody even ask you whether you thought that it
18   should or should not occur?
19 A.  No.
20 Q.  Okay.  Would you have characterized yourself as a
21   project manager at the time of Mr. Blackford's
22   discharge?
23 A.  Yes.
24 Q.  You mentioned a moment ago the file, and that's the same
25   file that I talked about at the beginning of the

[MAHAN]

1  Q.  Well, maybe I'm asking a question I've already asked.  I
2      apologize.  But do you have any recollection of what
3      time frame you received this document in, the
4      February 22, '95 letter?
5  A.  I sure don't.
6  Q.  Can you even say whether you received it during
7      Mr. Blackford's employment at PNL?
8  A.  No, I couldn't honestly say that for sure, although as
9      far as I know, the best of my recollection, that file's
10     been inactive for a very long time.
11 Q.  Did it become inactive before Mr. Blackford was fired?
12 A.  Yes.  It really became inactive at the time that I wrote
13     the documentation for it.  What I did from that point
14     forward is if Mike sent me E-mail, I may have put it in
15     there; I may have not.  I just didn't feel any strong
16     feelings to carry it forward past then.
17 Q.  Past November of '93?
18 A.  That's correct.
19 Q.  Were you aware of a complaint by Mr. Blackford
20     complaining about the requirement that staff fund their
21     own job assignments, in other words, find their own
22     funding -- strike that.  Bad question.
23              Were you aware of a complaint that
24     Mr. Blackford made concerning the requirement that staff
25     find their own job assignments and arrange their own

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF WASHINGTON

 3

 4    JAMES M. BLACKFORD,                )
                                         )
 5              Plaintiff,                )
                                         )
 6       vs.                              )    Case No.
                                         )
 7    BATTELLE MEMORIAL INSTITUTE,        )    98-CS-00032
                                         )
 8              Defendant.                )
                                         )
 9    _____)

10

11

12
                    DEPOSITION OF DARREN CURTIS
13
              Taken at the instance of the Plaintiff
14

15

16
                                   February 12, 1999
17
                                   9:00 a.m.
18
                                   601 Williams Boulevard
19
                                   Richland, Washington
20

21

22
                      BRIDGES & ASSOCIATES
23               Certified Shorthand Reporters
                        P. O. Box 5999
24              Kennewick, Washington   99336
                 (509) 735-2400 - (800) 358-2345
25
```

COPY

EXHIBIT 2

```
 1   E-mail to think that the purpose of that $500,000
 2   was to fire someone?
 3         A.    I take this as this is Dwight's
 4   sarcastic and flippant post to my post.  That's how
 5   I took it.
 6               MR. LACY:  That's all of my
 7   questions for you today.  Thank you.
 8               MR. DUNWOODY:  All right.  I've got
 9   a few questions for you.
10
11
12                      EXAMINATION
13
14   BY MR. DUNWOODY:
15         Q.    Mr. Curtis, during the time you've been
16   at Battelle, have you ever been a member of
17   management?
18         A.    I am a project manager now.  Whether
19   that's a part of -- I have not been a direct member
20   of line management, overseeing staff development.
21         Q.    Did you have any role in the decision
22   to terminate the employment of Michael Blackford?
23         A.    No.
24         Q.    Now I would like you to take a look at
25   Exhibit 1, page 5, the second box from the top.
```

DARREN CURTIS - by Mr. Dunwoody                90

(509) 735-2400   BRIDGES & ASSOCIATES   (800) 358-2345